## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOE MUSTARD,** | : | **CIVIL ACTION 2:21-CV-2315** |
| **Plaintiff,** | : | |
| **vs.** | : | **JUDGE SARAH D. MORRISON** |
| **TRIMEN, INC.** | : | **MAGISTRATE JUDGE VASCURA** |
| **Defendant.** | : | |

## MOTION FOR SUMMARY JUDGMENT
## OF DEFENDANT TRIMEN, INC.

Now comes Defendant Trimen, Inc., by and through counsel, and pursuant to Federal Civil Rule 56 hereby moves for summary judgment on all counts in its favor. There exist no genuine issues of material fact, and Trimen, Inc. is entitled to summary judgment as a matter of law. A Memorandum in Support follows.

Respectfully submitted,

*/s/ John C. Albert*
JOHN C. ALBERT   (0024164)
500 South Front Street, Suite 1200
Columbus, OH 43215-7631
(614) 229-4528; FAX: (614) 229-4559
Email: Jalbert@cbjlawyers.com
*Trial Attorney for Defendant,*
*Trimen, Inc.*

OF COUNSEL:
CRABBE, BROWN & JAMES
500 South Front Street, Suite 1200
Columbus, OH  43215
(614) 228-5511 FAX: (614) 229-4559

14312-42155\01407814.000

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  <u>BACKGROUND</u>

Plaintiff Joe Mustard filed this Complaint on May 7, 2021 against his former employer Trimen, Inc. setting forth two counts; disability discrimination in violation with Americans with Disabilities Act, and failure to accommodate under the Americans with Disability Act. (Doc. #1) Trimen, Inc. filed its answer on June 25, 2021 (Doc. #5) and thereafter discovery proceeded with Interrogatories, document production and depositions.

Defendant Trimen, Inc. ("Trimen") submits there exist no genuine issues of material fact, and summary judgment is warranted in its favor, on all counts.

## II.  <u>UNDISPUTED FACTS</u>

Plaintiff was hired by Trimen on or about August 1, 2016. When hired, he never claimed he was disabled, either to Trimen, or his health insurer Anthem. (Mustard Depo. at pp. 51 – 53).[1] He was not regularly taking medication either. He was hired as an apprentice, and Trimen (dba Amanda Plumbing) trained him to be a full-time plumber, taking about eight months or so. The owner/CEO Doug Hines hired him and he was trained by at least a combination of five persons there to be a plumber. Plaintiff even did work at Mr. Hines' own home, and attended Mr. Hines' daughter Amanda's wedding. (Mustard Depo. *Id.*, pp. 53 – 56)

Plaintiff does not know when he first started having migraine headaches, but claims he didn't start having them more often until halfway through his tenure at Amanda Plumbing (Trimen) (*Id.* at pp. 56 – 57). There is no dispute that Plaintiff's migraines were not ongoing, only every once in a while. On the day of his deposition, he testified that he hasn't had a migraine for at least two or three months and has no recollection of the date he had one before that or how long

---

[1] Plaintiff's deposition transcript has been filed with the Court in its entirety.

they last. (*Id*. at pp. 59 – 60). Plaintiff does not recall the first time he reported having a migraine after being employed at Trimen. However, he recalls going to the emergency room on December 9, 2018 which was a Saturday due to a migraine. He also followed up the next day on December 10, 2018 and believes he went to the hospital only twice for migraines while working at Trimen. (*Id*. at pp. 63 – 65). Plaintiff cannot document every time he called off at Amanda Plumbing due to a migraine. He cannot dispute that from August 2016 until December 2018 he never complained to Amanda Hines regarding migraines.

Amanda Plumbing kept a handwritten chronology regarding Plaintiff's employment, identified as Exhibit 7. When his employment started, he was paid $12 an hour on August 1, 2016. By the time he was terminated in January 2020, he had received 11 raises (from $12 an hour to $28 an hour). Two of the raises were given <u>after</u> he first reported having a migraine headache to Trimen. (*Id*. at pp. 66 – 70, Depo. Exhibit 7).

Plaintiff's deposition Exhibit 7 indicates the dates that he called off because he had a headache. Plaintiff has no way to dispute or deny this chronology, and has no way to recreate or refresh his memory as to when he called off. (*Id*. at 70 – 75). Importantly, Plaintiff admits that on any of these dates where he called off or left early, he was never terminated or disciplined for doing so.

Plaintiff admits that after the first time he called off sick due to migraines (December 14, 2018) he received two pay raises. He also confirmed that when he called off he would usually call or text Amanda (Doug Hines' daughter, co-owner) and she would always be pretty understanding, not yell or "bitch" at him. Importantly, she never threatened to terminate him because he was calling off sick, and the majority of the time if on a workday, he was allowed to go home. If it was in the morning before he started work, he was allowed to stay home. He doesn't recall if he

was ever already on a plumbing job working and couldn't finish because of a migraine and had to leave. (*Id.* at pp. 78 – 79). He doesn't recall if Amanda Plumbing ever had to send a different technician out to finish a job that he was on because he had a migraine. He identified deposition Exhibit 8 which are copies of text messages between himself and Amanda which he has no reason to dispute. He admits Amanda was being understanding as to the situation when he called off. (*Id.* at pp. 80 – 87). Plaintiff admits that at times he would get a migraine at work and would actually continue working, finish the job and then just go home. However, he has no way of recalling the number of times. (*Id.* at pp. 88 – 89).

Plaintiff was questioned about deposition Exhibit 9, the charge he filed with the EEOC, and admitted that he never opposed discrimination at any time while working at Amanda Plumbing. Furthermore, in the charge of discrimination, he claimed that he discussed his condition with Mr. Hines and Amanda Hines and requested that they accommodate it. In his deposition he admitted that any time he had such a discussion with them they agreed to allow him to take a day off whenever he was having migraines. They also allowed him to leave work due to migraines, as at least partially demonstrated in deposition Exhibit 8. (*Id.* at pp. 90 - 92).

Plaintiff claims that starting in June 2019 there were deductions from his paychecks because he had been making errors on plumbing projects, however, cannot provide a calculation or amount for such alleged deductions, and at least admits that "sometimes" he had made errors on jobs. (*Id.* at pp. 92 -95). He admits that he wasn't the only one getting deductions due to callback errors. Plaintiff admits and agrees that Amanda Plumbing agreed they would send a substitute if he was ever unable to complete a plumbing project, and can't deny that they did so when necessary. (*Id.* at pp. 95 - 98). Importantly, the Plaintiff admitted at pp. 98 – 99:

> Q. So Amanda Plumbing agreed to accommodate you if
> you had migraines, they would let you stay off work, not

4

come in to work or if you had to leave during the day
you could leave during the day, correct?

A. Well, Amanda did, yes.

Q. Well, do you have any record of anybody when you
called off work in the morning for a migraine saying,
no, you've got to come in to work or you're fired?

A. No.

Q. Okay. Do you have any record of anytime you
called off work midday?

A. No.

Q. Where they said if you don't finish your job, if
you don't finish your hours you're fired?

A. No.

Plaintiff was terminated on or about January 30, 2020 by CEO/owner Doug Hines in a
meeting also attended by Phillip Hayden Taylor. Plaintiff claims that Mr. Hines said that because
of his medical condition he wasn't able to perform job duties.[2]  Plaintiff admits that at his
termination meeting the fact that he had numerous callbacks from customers due to errors was
discussed and that was the "biggest thing" that he was trying to dispute. He admits Mr. Hines
"might" have given him callback examples at this meeting, but doesn't remember exactly what.
He again admits that deductions had to be taken from his paychecks for several months before he
was terminated due to these errors, which were costly to the company having to incur additional
costs and expenses to correct the errors with the customers. (*Id.* at pp. 99 - 103).

Trimen documents marked 009 – 64 were reviewed by Plaintiff in his deposition as the
callback invoices. Plaintiff could not deny they were accurate, and specifically could not deny that

---

[2] Mr. Hines and Mr. Taylor vehemently deny this was said, however for the purposes of this motion, Plaintiff's
claim this was said does not create a genuine issue of material fact as discussed herein.

Amanda Plumbing had to credit customers for callbacks on some of the work that he did. (*Id.* at pp. 106 – 111, Trimen 009 – 64).

Plaintiff admits that he would receive a verbal yearly review by Doug Hines, however, cannot recall anything about these reviews, what was said, and has no way to refresh his memory. He admits that Mr. Hines would threaten to terminate him more than once if he did not improve his performance. (*Id.* at pp. 112 - 115).

With regard to Plaintiff's claim that Amanda Plumbing "perceived" that he had a disability, Plaintiff could not provide evidence, only saying that Trimen knew he had migraines and cannot say how many days after working 3½ years at Amanda Plumbing he left work or called off due to migraines. Importantly, he testified as follows:

> Q. Having migraines didn't prevent you from being an employee and working, it just meant that you had to call off once in a while when you got a bad migraine, correct?
>
> A. Correct.

(*Id.* at pp. 126 - 128).

Plaintiff admitted that prior to being employed at Amanda Plumbing, he never requested any work or accommodations from any previous employer and has never told any employer who he worked for that he was disabled and needed an accommodation. More specifically, he testified at page 49:

> Q. And to be more specific, have you ever told any employer that you were disabled due to migraines and needed an accommodation?
>
> A. No.

(*Id.* at pp. 46 – 51, Depo. Exhibit 5).

6

Similarly of importance, after leaving Amanda Plumbing Plaintiff was hired by MB Plumbing as a plumber, has only called off sick one day that he recalls, cannot identify any illness he has experienced while working for MB Plumbing, never gave them any type of doctor statements, did not request any type of light duty restrictions because of his headaches, nor did he request any type of accommodation from MB Plumbing. He never told them he couldn't perform all of his duties because of headaches. Furthermore, he can only recall calling off work once due to headaches while employed at MB Plumbing, and at most guesses four times in the past year and a half. (*Id.* at pp. 19 - 39).

## III.   **ARGUMENT**

Plaintiff's Complaint (Doc. #1) sets forth two Counts. Count I alleges disability discrimination in violation of the ADA, 42 U.S.C. §12101 et seq. (Doc. #1, ¶¶ 61 – 69). Count II alleges failure to accommodate under the ADA. (Doc. #1, ¶¶ 70 – 77). For the reasons that follow, Defendant is entitled to summary judgment as a matter of law.

### A.   **Count I - Disability discrimination in violation of the ADA.**

In this Count, Plaintiff alleges that his medical condition constituted a physical impairment which substantially impaired one or more of his major life activities including working. He also alleges that Amanda Plumbing perceived him as being disabled.

- **Standard of Review**

The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to…discharge of employees." 42 U.S.C. §12112(a). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major

life activities are those basic activities "that the average person in the general population can perform with little or no difficulty." *Linser v. State of Ohio, Dept. of Mental Health*, 234 F.3d 1268, at *2 (6th Cir. 2000) (citing *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.), *cert. denied*, ___ U.S. ___, 120 S.Ct. 45 (1999)).

The status of being a disabled individual is "a highly fact-sensitive issue, requiring an individualized inquiry and case-by-case determination." *McDonald v. Potter*, No. 1:06-CV-1, 2007 WL 2300332 (E.D. Tenn. Aug. 7, 2007), *aff'd*, 285 F. App'x 260 (6th Cir. 2008) (internal citations omitted). In order for a condition to constitute an impairment, it must "substantially limit[...] one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). Included among these activities are functions such as caring for oneself, sleeping, seeing, interacting with others, and working. 29 C.F.R. § 1630.2(i)(1)(i).

- **Temporary/intermittent headaches are not considered a disability under the ADA.**

A panel of the Sixth Circuit has held that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Boerst v. Gen. Mills Operations*, 25 Fed.Appx. 403, 407 (6th Cir.2002). See also *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir.2001) ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population."); *Verhoff v. Time Warner Cable, Inc.*, 299 Fed.Appx. 488, 492 (6th Cir.2008) (holding that less than five hours of "not restful" sleep is insufficient to constitute substantial impairment).

In *Lee v. City of Columbus,* the plaintiff experienced interruption in their sleep every 1 – 1½ hours as a result of migraines. 659 F.Supp.2d 899, 908 (S.D. Ohio 2009). However, the court concluded that waking up three to five times a night "lacks the kind of severity necessary to qualify

as a substantially limiting condition." *Id.* Additionally, the Sixth Circuit found that if the plaintiff takes medication to curb their sleeping problem, and therefore only has their sleep disrupted infrequently, they are not substantially limiting in their major life activity of sleeping. *Linser,* 234 F.3d, at *3. Herein, Plaintiff is not even regularly taking medication for his headaches.

Seeing is considered a major life activity and has been raised in connection with migraines. *McDonald,* 2007 WL 2300332, at *36 (citing *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 376 (6th Cir.1997)). Plaintiff has not alleged or demonstrated any measure of permanent or temporary damage to his eyesight due to his headaches. Courts are hesitant to find that mere light sensitivity substantially impairs the major life activity of seeing. *McDonald,* 2007 WL 2300332, at *36; See also *McPherson v. Federal Express Corp.,* No. 06-5042, 2007 WL 2050853, at *5 (6th Cir. Jul. 13, 2007).[3]

Under the EEOC, working is considered a major life activity. 29 C.F.R. § 1630(i). However, when the major life activity implicated is working, "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes," not just an "inability to perform a single, particular job." 29 C.F.R. § 1630.2(3)(i).

In *McDonald,* the court found that the plaintiff had not presented evidence that she could not perform a class of jobs or a broad range of jobs. 2007 WL 2300332, at *40. The plaintiff testified that her migraines occur at different times of the day or week and that they are triggered by fragrances and strong odors, weather, heat and stress. *Id.* Plaintiff's doctor had indicated that she should work in a low-odor environment. *Id.* However, the court found that this evidence, at the most, showed that the plaintiff may be unable to perform particular jobs along with the narrow, high-odor jobs described by her doctor. *Id.* As such, the court found that the plaintiff was not

---

[3] Plaintiff has not identified any type of expert witness in this case, and the deadline for doing so has long passed.

substantially limited in the major life activity of working, nor any other major life activity, and held that her migraines did not constitute a disability. *Id.*

In *Williams v. Stark County Bd. of County Comm'rs*, the plaintiff suffered from migraines and hypertension and requested a demotion to a less stressful job. 7 F.Appx.441, 444 (6th Cir. 2001). The Sixth Circuit concluded that the plaintiff's migraines constituted an impairment based on the opinion of a migraine specialist but found the fact that the plaintiff requested a demotion undermined the specialist's opinion. *Id.* at 447. This is because it suggested that the plaintiff could perform certain jobs, just not the job from which she was terminated. *Id.* Therefore, because the plaintiff had failed to alleged or provide evidence that her claimed disability disqualified her from a broad class of jobs, she had not shown that she was substantially limited from the major life activity of working. The same analysis applies herein: Plaintiff has continued to work, only experiencing headaches every once in a while.

The more infrequently the migraines occur and the less severe the attacks are, the less likely a court will be to hold that it substantially limits a major life activity. See *Williams v. Stark Cty. Bd. of Cty. Commrs,* 7 Fed.Appx 441, 448 (6th Cir. 2001) ("The medical opinions in the record do not regard Plaintiff's migraines as a permanent condition or one causing significant functional impairment."); See also *Lee v. City of Columbus,* 659 F.Supp.2d 899, (S.D. Ohio 2009) ("[The plaintiff's] testimony indicates that she was unable to [perform major life activities] intermittently, two to three times per week, while she was experiencing the migraine and for several hours afterward; but that alone is not sufficient."); *McDonald*, 2007 WL 2300332, at *36 (The plaintiff's "recurrent" and "incapacitating" migraines which occurred two or three times per week causing light sensitivity, dizziness and nausea were not substantially limiting to her major life activities of seeing, thinking, concentrating, interacting with others and working.)

The same analysis and result applies herein. Plaintiff does not qualify as having a "disability" under the ADA, and has not established the existence of a "perceived" disability.

**B.     Count II – Failure to Accommodate under the ADA.**

At pp. 70 – 77 of the Complaint, Plaintiff alleges that Amanda Plumbing failed to provide a reasonable accommodation. However, Plaintiff's undisputed testimony and admissions disproves Plaintiff's allegations.

As indicated in the undisputed material facts referenced above, Plaintiff specifically admitted that anytime he had a migraine, he would simply ask to either leave work early, or not come into work, and his request was readily granted by Amanda. Plaintiff's text messages with Amanda Hines confirm such a conclusion. Plaintiff admitted that anytime he needed to call off sick, Amanda Hines was understanding, never threatened to discipline him because of it, he was allowed to go home if he had a migraine while on the job, and was allowed to stay home if he had a migraine in the morning. (Plaintiff's Depo. pp. 78 – 88).

As such, it is undisputed that the few times Plaintiff requested to leave work early, or take off work due to his headaches, Amanda Plumbing readily allowed him to do so. Such was the only request Plaintiff ever made with regard to his infrequent headaches, and Amanda Plumbing responded with understanding and approval. As such, Plaintiff's claim that Defendant failed to accommodate his "alleged" disability is totally without merit.[4]

An employer must engage in an "informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3); *Banks v. Bosch Rexthroth*, 610 F. App'x 519 (6th Cir. 2015); *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007). "The employee must

---

[4] Such is the case even if it is assumed that Plaintiff had a qualifying disability under the ADA, which Defendant denies, as set forth in argument A above.

initiate the interactive process by requesting an accommodation." *Vaughn v. Parkwest Med. Ctr.*, 716 F. App'x 428, 434 (6th Cir. 2017) (citing *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046 (6th Cir. 1998)).

However, "an employee need not use the magic words 'accommodation' or even 'disability,' [but] the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 Fed. Appx. 442, 449–50 (6th Cir. 2007) (plaintiff's statements that his current position was "kicking [his] ass" were not specific enough to be considered requests for accommodations); *see also Thompson v. E.I. DuPont deNemours & Co.,* 140 F. Supp. 2d 764, 774 n.8 (E.D. Mich. 2001) ("[T]he Court notes that its research has not uncovered a single Sixth Circuit case in which an employee's 'vague' request [for accommodation] wholly excused the employer from any further inquiry").

An employer's failure to accommodate is listed in the Act's definition of disability discrimination. 42 U.S.C. § 12112(b)(5). In order to establish a prima facie case of disability discrimination under the ADA for failure to accommodate, the plaintiff must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Melange v. City of Ctr. Line*, 482 Fed.Appx. 81, 84 (6th Cir. 2012). As a result, if the plaintiff cannot show that he requested a reasonable accommodation prior to his termination, his prima facie case also fails. *Id.*

Even if it is assumed Plaintiff's requests to stay home or go home from work constitute a request for an accommodation, even though he never presented any medical restrictions, Amanda Plumbing readily agreed. The Plaintiff never specifically used the words "accommodation" or

12

"disability" when he called off, and never presented existing medical work restrictions. *Cf. Leeds*, 249 Fed.Appx. at 450 ("There is nothing that would have indicated to plaintiff's supervisors that plaintiff's statements [that the work was "kicking his ass"] meant anything more serious than that the work was hard."). Herein, Plaintiff did not identify or provide any medical work restrictions, just called or texted to ask off work.

### C. Plaintiff was terminated due to his insubordination, bad attitude, disrespect, deficient work and frequent callbacks.

As the attached Affidavits of owner/former CEO Doug Hines, Phillip Hayden Taylor, and Amanda Hines indicate, Plaintiff was terminated because he had shown Mr. Hines disrespect, walked out on him during meetings, would hang up the phone on him, or would not even take Mr. Hines' phone calls. Amanda Plumbing had invested a lot in training Plaintiff and he had been given every opportunity. He was told if his attitude and callbacks didn't improve he would be fired within 90 days. Mr. Hines tried to talk to Plaintiff regarding his callbacks and his bad attitude, and Plaintiff would hang up the phone on him. Mr. Hines himself first met Plaintiff by interviewing him, hiring him as an apprentice and assisted Plaintiff in working his way up to become a plumber, eventually being dispatched to customers' homes with his own truck. Plaintiff never told Mr. Hines he was disabled, only indicating that at times he had migraine headaches, which Mr. Hines never witnessed. Plaintiff never asked Mr. Hines for time off for doctors' appointments, the request would be made to Mr. Hines' daughter, Amanda. Mr. Hines did annual, verbal reviews of all of his employees and plumbers and Plaintiff's performance and attitude became worse in the last six months before he was terminated. Mr. Hines gave him numerous verbal warnings, telling him he was on thin ice due to his attitude and many callbacks, and if he did not improve he would be terminated. (See attached Affidavit of Doug Hines, Exhibit 1.)

Phillip Hayden Taylor is an employee and co-owner of Trimen/Amanda Plumbing along with Mr. Hines and Amanda Hines. Mr. Taylor was present in the room on or about January 30, 2020 when Mr. Hines terminated Plaintiff. At no time did Mr. Hines tell Plaintiff he was being terminated because of his headaches. Instead, Mr. Hines specifically terminated Plaintiff only because of his bad attitude, lack of respect, and poor job performance/callbacks. (See attached Affidavit of Mr. Taylor, Exhibit 2.)

Amanda Hines, the daughter of Doug Hines, is also an employee and co-owner of Amanda Plumbing. Ms. Hines first met Plaintiff when he was hired by her father, as an apprentice. She later became Plaintiff's supervisor along with her father. Plaintiff never disclosed a disability to them, would only call and say he had headaches, but she never personally witnessed them. He would call off sick a couple of times a month and never asked for time off to go to the doctor. She cannot recall him ever leaving work for a doctor's appointment, but instead usually would just give notice. Her father did performance evaluations of Plaintiff every year on his hiring anniversary, and at such time he would get a raise. Multiple times Plaintiff was warned, as he was becoming contentious, angry, disrespectful and dismissive. He would hang up on Doug Hines. Plaintiff had a huge attitude problem and it was not getting any better. Plaintiff had numerous callbacks throughout the year of 2019 totaling $14,000.00 in the past six months, and that does not include lost revenue. When questioned by Doug Hines, Plaintiff would not cooperate, only give short answers as if not interested, and acted like "you were stupid". She recalls Plaintiff turning his back and walking away from Doug Hines, who was then CEO. As proven by Plaintiff's own testimony/ admissions, Ms. Hines confirms that anytime Plaintiff asked to miss work, or call off work early due to headaches, she readily agreed and allowed him to do so. (See attached Amanda Hines Affidavit, Exhibit 3.)

14

It is clear that Plaintiff was terminated due to his attitude, disrespect for Mr. Hines as CEO, and significant customer callbacks, costing the company over $14,000.00. Plaintiff had been warned numerous times, and failed to improve, resulting in his termination. His termination had nothing to do with his infrequent/periodic headaches, regarding which he was always given the opportunity to stay home or leave work early, without repercussion.[5]

## IV.   **CONCLUSION**

Based upon the foregoing, there exist no genuine issues of material fact. Defendant Trimen, Inc., dba Amanda Plumbing is entitled to summary judgment on all counts and dismissal of Plaintiff's Complaint.

Respectfully submitted,

/s/ John C. Albert
JOHN C. ALBERT   (0024164)
500 South Front Street, Suite 1200
Columbus, OH 43215-7631
(614) 229-4528; FAX: (614) 229-4559
Email: Jalbert@cbjlawyers.com
*Trial Attorney for Defendant,*
*Trimen, Inc.*

OF COUNSEL:
CRABBE, BROWN & JAMES
500 South Front Street, Suite 1200
Columbus, OH  43215
(614) 228-5511 FAX: (614) 229-4559

---

[5] Indeed, qualified full licensed plumbers are hard to find, and Defendant gave Plaintiff every opportunity before having no choice but termination.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of May, 2022, the foregoing was electronically filed using the Court's ECF system and a copy was duly served via Electronic Mail and/or U.S. Regular Mail, postage prepaid, upon the following:

Trisha M. Breedlove, Esq.
Gregory T. Shumaker, Esq.
THE SPITZ LAW FIRM, LLC
1103 Schrock Road, Suite 307
Columbus, OH 43229
Trisha.breedlove@spitzlawfirm.com
Sean.costello@spitzlawfirm.com
*Attorneys for Plaintiff, Joe Mustard*

/s/ John C. Albert
JOHN C. ALBERT   (0024164)
*Attorney for Defendant, Trimen, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOE MUSTARD,                    :

      PLAINTIFF,                    :

vs.                             :

TRIMEN, INC.                    :

      DEFENDANT.                    :

CIVIL ACTION 2:21-CV-2315

JUDGE SARAH D. MORRISON

MAGISTRATE JUDGE VASCURA

---

### AFFIDAVIT OF DOUG HINES

---

Now comes Doug Hines, after being duly sworn states under oath as follows:

1.    I am of over the age of majority, am of sound mind, and state the following based upon my personal experience and knowledge.

2.    I founded Trimen, Inc. dba Amanda Plumbing in 1995 and was the CEO operating the business until I retired as CEO on December 30, 2020. I remain a co-owner with my daughter Amanda Hines and Phillips Hayden Taylor. Prior to my retirement I supervised and was in charge of all employees, including Plaintiff herein.

3.    Plaintiff was terminated because he had shown me disrespect, walked out on me during meetings, hung up the phone on me, or would not even take my phone calls. Amanda Plumbing had invested a lot in training Plaintiff and I gave him every opportunity. He was told if his attitude and callbacks didn't improve he would be fired within 90 days. I tried to talk to Plaintiff regarding his callbacks and his bad attitude, and Plaintiff would hang the phone up on me. I first met Plaintiff interviewing him, hiring him as an apprentice and assisted him in working his way up to become a plumber, being dispatched to customers' homes with his own company truck.

Page **1** of **2**

14312-42155\01407882.000


EXHIBIT
1

Plaintiff never told me he was disabled, only indicating that at times he had migraine headaches, which I never witnessed. He never requested or provided work restrictions and worked full duty. Plaintiff never asked me for time off for doctors' appointments, the request would be made to my daughter, Amanda. I did annual, verbal reviews of all of our employees and plumbers. Plaintiff's performance and attitude became worse in the last six months before he was terminated. I gave him numerous verbal warnings, telling him he was on thin ice due to his attitude and many callbacks, and if he did not improve he would be terminated. Unfortunately, he did not improve and was terminated on January 30, 2020.

4.      On or about January 30, 2020, I met with Plaintiff in my office. Also in attendance was Phillip Hayden Taylor. During that meeting I discussed with him his overall job performance, his numerous customer callbacks, and his bad attitude. I told Plaintiff he was being terminated. There was no mention of his headaches or of any claimed disability. This discussion and meeting was witnessed by Phillip Hayden Taylor.

Further affiant sayeth naught.

_____
DOUG HINES

**STATE OF** _Ohio_       :
                          :
**COUNTY OF** _Delaware_ : SS:

Sworn to and subscribed in my presence this _27_ day of _May_____, 2022.



_____
NOTARY PUBLIC

Page **2** of **2**

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOE MUSTARD, | : | |
| PLAINTIFF, | : | CIVIL ACTION 2:21-CV-2315 |
| vs. | : | JUDGE SARAH D. MORRISON |
| TRIMEN, INC. | : | MAGISTRATE JUDGE VASCURA |
| DEFENDANT. | : | |

---

**AFFIDAVIT OF PHILLIP HAYDEN TAYLOR**

---

Now comes Phillip Hayden Taylor, after being duly sworn states under oath as follows:

1.  I am of over the age of majority, am of sound mind, and state the following based upon my personal experience and knowledge.

2.  I am an employee and co-owner of Trimen, Inc./Amanda Plumbing along with Amanda Hines and Doug Hines. I was present in the room on or about January 30, 2020 when Mr. Hines terminated Plaintiff. At no time did Mr. Hines tell Plaintiff he was being terminated because of his headaches. Instead, Mr. Hines specifically terminated Plaintiff only because of his bad attitude, lack of respect, and poor job performance/callbacks. Plaintiff's headaches were never mentioned, nor was there any discussion or mention of a claimed disability.

Further affiant sayeth naught.

PHILLIP HAYDEN TAYLOR

STATE OF OHIO          :
                                  :
COUNTY OF DELAWARE : SS:

Sworn to and subscribed in my presence this 27th day of May, 2022.

_____
NOTARY PUBLIC

**EXHIBIT
2**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOE MUSTARD,                    :

      PLAINTIFF,              :     CIVIL ACTION 2:21-CV-2315

vs.                             :     JUDGE SARAH D. MORRISON

                  :     MAGISTRATE JUDGE VASCURA

TRIMEN, INC.                    :

      DEFENDANT.              :

---

### AFFIDAVIT OF AMANDA HINES

---

Now comes Amanda Hines, after being duly sworn states under oath as follows:

1.     I am of over the age of majority, am of sound mind, and state the following based upon my personal experience and knowledge.

2.     I began working at Trimen, Inc. dba Amanda Plumbing 10 years ago, filing, input, working up the ladder as an Administrative Assistant. I am currently a co-owner of Trimen, Inc. dba Amanda Plumbing along with my father Doug Hines, and Phillip Hayden Taylor. I also currently act as CEO, operating the business along with Phillip Hayden Taylor for approximately the past two years, after my father's retirement as CEO.

3.     I first met Plaintiff when he was hired by my father, as an apprentice. I later became Plaintiff's supervisor along with my father. Plaintiff never disclosed a disability to us nor provided medical work restrictions. He would only call and say he had headaches, but I never personally witnessed them. He would call off sick a couple of times a month and never asked for time off to go to the doctor. I cannot recall him ever leaving work for a doctor's appointment, but instead usually would just give notice. My father Doug Hines as CEO did the performance evaluations of Plaintiff every year on his hiring anniversary, and at such time he would get a raise. Multiple times

Page **1** of **2**

EXHIBIT
3

Plaintiff was warned, as he was becoming contentious, angry, disrespectful and dismissive. He would hang up the phone on Doug Hines, or not take his calls. Plaintiff had a huge attitude problem and it was not getting any better. Plaintiff had numerous callbacks throughout the year of 2019 totaling $14,000.00 in the past six months, and that did not include lost revenue (accurate copies labeled Trimen 0009 – 0064). When questioned by Doug Hines, Plaintiff would not cooperate, only gave short answers as if not interested, and acted like "you were stupid". She recalls Plaintiff turning his back and walking away from Doug Hines, who was then CEO. Anytime Plaintiff asked to miss work, or call off work early due to headaches, I readily agreed and allowed him to do so.

4.      Plaintiff was never disciplined or warned regarding his requests for leave. Trimen, Inc. dba Amanda Plumbing invested a lot in hiring and training Plaintiff to become a licensed plumber. It is challenging to train, hire and retain licensed full service plumbers, and Plaintiff was given every opportunity before termination.

Further affiant sayeth naught.

_____
AMANDA HINES

**STATE OF OHIO**             :
                              :
**COUNTY OF DELAWARE**     : SS:

Sworn to and subscribed in my presence this 27th day of May_____, 2022.

_____
NOTARY PUBLIC

Page **2** of **2**